UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDRE ANSARI,

                    Plaintiff,

v.

MOISES JIMENEZ and CITY OF
DETROIT,

                    Defendants.

_____/

Case No. 2:20-cv-10719

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
GRANTING IN PART AND DENYING
IN PART SUMMARY JUDGMENT MOTION [59]**

Only malicious prosecution and *Brady* claims against Defendant Moises
Jimenez remain in the case. ECF 1, PgID 10–14. Defendant asserted qualified
immunity as a defense to the claims in a summary judgment motion. ECF 59. The
parties briefed the motion, ECF 64; 65, and the Court ordered supplemental briefing
on two questions, ECF 67, that the parties provided, ECF 68; 69.[1] For the following
reasons, the Court will grant in part and deny in part the summary judgment
motion.[2]

_____

[1] The Court need not resolve the supplemental briefing issue to resolve the motion
and thus the Court will not address it.

[2] Based on the parties' briefing, the Court will resolve the motion on the briefs without
a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

## BACKGROUND

Rosalind Barley parked her car outside Miguel Figueroa's Detroit home on September 22, 2012. *People v. Ansari*, No. 318524, 2015 WL 630388, at *1 (Mich. Ct. App. Feb. 12, 2015) (per curiam). As Figueroa sat in the backseat, a shooter began firing a gun at the vehicle. *Id.* The shooting wounded Barley and Figueroa and killed another passenger. *Id.* Defendant was assigned to investigate the shooting. ECF 64-2.

Barley described the shooter as a twenty-year-old black male who was tall "fat (not sloppy) 300 [pounds], [dark complexion]," and possibly had "braids [or] cornrows to back." ECF 59-4, PgID 956. Five days later, Barley described the shooter the same way. ECF 59-5, PgID 960. In her statement, she explained that she had felt threatened by her ex-boyfriend, Jose Sandoval, because he had wanted his car back. ECF 59-5, PgID 960–61.

A different witness—who heard gunshots but had not seen the shooting—described the suspect as nearly the same, but claimed the shooter was older. ECF 59-6, PgID 963. And another witness—who also heard gunshots but had not seen the shooting—described the suspect as "a heavy set black male about 6 foot tall." ECF 59-7, PgID 967.

A Crime Stoppers anonymous tip identified the suspect as "Sousa" who was "a [H]ispanic male . . . 28 years old, and approximately 230 [pounds] and 5'8" with "4

inch long dark brown dreadlocked hair" and a "full beard." ECF 59-9, PgID 971.[3] The tipster stated that the suspect is in a gang "known as Sousas and Friday's boys." *Id.*

Defendant later gave Barley and Figueroa line-ups of six-photograph arrays to identify the shooter. ECF 59-8, PgID 969; ECF 59-10, PgID 973. Neither array had Plaintiff's photograph. ECF 59-8, PgID 969; ECF 59-10, PgID 973. And neither Barley nor Figueroa identified a photograph as the shooter. ECF 59-8, PgID 969; ECF 59-10, PgID 973.

The next day, Figueroa gave a statement, he described the shooter as a "Black male, about 25-28 [years old], tall, 6-01, medium built, dark complexed." ECF 59-11, PgID 976. When asked about Sandoval, Figueroa explained that he did not "take anything from [Sandoval]," except for his girlfriend. *Id.* at 977. He also worked with a graphic artist to create a composite sketch of the shooter. ECF 59-12, PgID 979.

Defendant later showed another six-photograph array line-up to Figueroa. ECF 59-13, PgID 981. Plaintiff's photograph was the second photograph and Figueroa identified Plaintiff as the shooter. *Id.*

Defendant then gave Barley another six-photograph array line-up that included Plaintiff's photograph. ECF 64-13, PgID 1286. She did not identify any photograph as the shooter. *Id.*

That same day, Defendant issued a report that recommended Plaintiff's arrest for first-degree murder. ECF 64-2, PgID 1202. Defendant based the recommendation on Figueroa's identification in the photo array. *Id.* at 1203. The warrant request did

---

[3] Plaintiff's nickname is "Sosa." ECF 59-27, PgID 1080.

not mention Sandoval or a motive. *See generally* ECF 64-2. The prosecutor on the case signed the investigator's report. *Id.* at 1202. And police arrested Plaintiff for first-degree murder.

At a hearing the next month, Plaintiff's counsel requested a live lineup. ECF 59-14, PgID 997. At the live lineup, both Figueroa and Barley identified Plaintiff as the shooter. ECF 59-15, PgID 1008–09; ECF 59-16, PgID 1017–18 (Figueroa testimony at preliminary examination hearing), 1025–27 (Barley testimony at preliminary examination hearing). At the preliminary examination hearing, Figueroa and Barley identified Plaintiff as the shooter again. ECF 59-16, PgID 1013–14 (Figueroa), 1022–23 (Barley). Figueroa also confirmed that he had identified Plaintiff in the photo array. *Id.* at 1016. Barley confirmed that she did not identify the shooter in any photo array. *Id.* at 1025. The Michigan judge ultimately found probable cause on the first-degree murder charge and bound Plaintiff over to the Wayne County Circuit Court. *Id.* at 1028–31.

The first trial resulted in a hung jury. ECF 64, PgID 1174. In the second trial, the jury convicted Plaintiff on all crimes charged. *Ansari*, 2015 WL 630388, at *2. The Michigan Court of Appeals affirmed the conviction on appeal, *id.* at *1, and held that the pretrial identification procedures were not unduly suggestive, *id.* at *2–3.

Years later, the Wayne County Conviction Integrity Unit investigated Plaintiff's conviction. The Unit found that Sandoval had carried out the shooting as well as another shooting around the same time because Barley and "Figueroa allegedly stole 3.5 [kilo]grams of raw heroin" from Sandoval. ECF 64-19, PgID 1374.

4

The Unit found that Defendant had "admitted to deliberately failing to investigate Jose Sandoval because Sandoval is tied to a powerful Mexican drug cartel." *Id.* at 1377. Defendant believed that his family in Mexico would be killed if he pursued Sandoval. *Id.* The Unit found that Defendant "distorted every aspect of his investigation," *id.*, and that Barley and Figueroa had "sabotag[ed] the investigation," *id.* at 1378. As a result, the Unit recommended to fully exonerate Plaintiff. *Id.* at 1387. The Wayne County Prosecutor's office in turn stipulated to an order vacating Plaintiff's conviction and sentence and dismissing all charges against him. ECF 64-20, PgID 1398.

The evidence related to Sandoval's involvement in the shooting is extensive. To start, Defendant received an anonymous tip from the Federal Bureau of Investigation ("FBI") that supported how two witnesses described who they believed was the shooter. *Compare* ECF 64-8, PgID 1224, *with* 59-4, PgID 956, ECF 59-5, PgID 960, *and* ECF 59-6, PgID 963; *see also* ECF 64-29, PgID 1628. The tip explained that "Solo" was the shooter and he was a black male in his "30's [and] heavyset." *Id.* The tip also verified another tip that Defendant had received from an Immigration and Customs Enforcement ("ICE") agent that revealed the shooting was drug related. *see also* ECF 64-29, PgID 1628.

Defendant also knew from unregistered and Drug Enforcement Administration ("DEA") sources that Sandoval was a kingpin heroin dealer in Southwest Detroit. ECF 64-10, PgID 1240. Defendant also believed that Plaintiff had worked as the hitman for Sandoval. *Id.* at 1242. The DEA later provided Defendant

with GPS tracking and cellphone data that showed Sandoval was in the immediate area of the shooting when it occurred. ECF 64-21, PgID 1400–01; ECF 64-19, PgID 1383. Defendant even knew that the cellphone data showed that Plaintiff and Sandoval had no contact. ECF 64-10, PgID 1242–43. Besides cellphone data, "very high up" drug sources confirmed to Defendant that Sandoval had hired a hitman from a local gang to carry out the shooting because Figueroa had stolen heroin from Sandoval. ECF 64-24, PgID 1428. Last, Defendant knew that law enforcement had a Title III wiretap on Sandoval during the period at issue but Defendant "didn't want to know" more about it. ECF 64-24, PgID 1429.

The prosecutor in Plaintiff's criminal case claimed that she did not receive the Sandoval evidence from Defendant. ECF 64-27, PgID 1526, 1529, 1536, 1539–40; ECF 64-24, PgID 1430. She also explained that she could not recall discussing Sandoval with Defendant. ECF 64-27, PgID 1528. Defendant, however, testified that he turned over all the Sandoval evidence to the prosecutor. ECF 64-10, PgID 1242–43.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for

trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

To establish a § 1983 claim, Plaintiff must prove "that (1) a person, (2) acting under color of [S]tate law, (3) deprived [him] of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citation omitted). "Qualified immunity is an affirmative defense" to a § 1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). It "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Once a defendant asserts a qualified immunity defense, "Plaintiff bears the burden of showing that [the] defendant[] [is] not entitled to qualified immunity."

7

*Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Under qualified immunity, the Court must engage in a two-prong analysis and may ultimately decide which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

First, the Court must "view[] the facts in the light most favorable to [] [Plaintiff]" and "determine whether the officer committed a constitutional violation." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002)). Second, "if there is a constitutional violation, the [C]ourt must determine whether that constitutional right was clearly established at the time of the incident." *Id.* (citation omitted). The Court will grant qualified immunity to Defendant on the malicious prosecution claim and all but one *Brady* claim.

I.    Malicious Prosecution Claim

The complaint asserted Fourth Amendment violations based on "fabrication of evidence" and malicious prosecution. ECF 1, PgID 10, 12. Fabricating evidence, however, is a Fourth Amendment malicious prosecution claim. *See Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) ("The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person."). Both claims thus fall under malicious prosecution.

"The Sixth Circuit recognizes a . . . constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625

8

F.3d 294, 308 (6th Cir. 2010) (cleaned up). "[E]ven if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to *strengthen* the case against that suspect." *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015) (emphasis added). To be sure, malicious prosecution claims concern "the initiation or *maintenance* of a prosecution." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (emphasis added). That said, Plaintiff's response brief and complaint asserted only that the malicious prosecution claim turns on Defendant's request for the arrest warrant—not any post-warrant conduct. ECF 64, PgID 1180–81 (citing ECF 1, PgID 7, 12–13).[4]

"To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment," Plaintiff must prove four elements. *Sykes*, 625 F.3d at 308. Defendant's qualified immunity defense hinges on the first two: whether he participated in or influenced the decision to criminally prosecute Plaintiff, and whether he had probable cause at the time of Plaintiff's

---

[4] Officers can be held liable for malicious prosecution if they "influenced or participated in the prosecutor's decision to *continue* the prosecution after [they] had knowledge of facts that would have led any reasonable officer to conclude that probable cause had ceased to exist." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (emphasis added and internal quotation marks omitted). For example, officers must "refrain from engaging in acts which continue[] a person's detention without probable cause." *Gregory v. City of Louisville*, 444 F.3d 725, 749 (6th Cir. 2006); *see also Jones v. Clark Cnty.*, 959 F.3d 748, 768 (6th Cir. 2020) (holding that if a jury believed an officer withheld exculpatory information from prosecutors, then that would have violated the plaintiff's right against continued detention without probable cause), *abrogated on other grounds*, *Thompson v. Clark*, 142 S. Ct. 1332, 1340–41 (2022). Because Plaintiff did not raise post-warrant conduct as a basis for the malicious prosecution claim, the Court's inquiry focuses only on the conduct leading to the arrest warrant.

arrest. ECF 59, PgID 898; *see Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022) (citing *Sykes*, 625 F.3d at 308).

The first element requires Plaintiff to show that Defendant "participated in or influenced the decision to criminally prosecute him." *Novak*, 33 F.4th at 307 (citing *Sykes*, 625 F.3d at 308). Because the Sixth Circuit "construe[s] participation in light of traditional 'tort causation principles,' [Defendant] must have done more than passively cooperate." *Id.* (citing *Sykes*, 625 F.3d at 308 n.5). In other words, Defendant must have "aided in the decision to prosecute." *Id.* (citing *Sykes*, 625 F.3d at 308 n.5).

"A prosecutor's independent charging decision typically breaks the causal chain for malicious-prosecution purposes." *Id.* (citing *Sykes*, 625 F.3d at 316). Officers can face liability only if they "influenced or participated in the prosecutor's decision to continue the prosecution *after* [they] had knowledge of facts that would have led any reasonable officer to conclude that probable cause had ceased to exist." *Moseley*, 790 F.3d at 654 (emphasis added and internal quotation marks omitted).

The Court will grant summary judgment on the malicious prosecution claim because Defendant had probable cause for Plaintiff's arrest based on the eyewitness identification and the composite sketch. Eyewitness identifications create "sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (quotation omitted). Put differently, an arrest lacks probable cause when "based solely on an

eyewitness account that is in some way untruthful or unreliable." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 282 (6th Cir. 2020) (citing *Ahlers*, 188 F.3d at 370–71).

Defendant conceded that "[t]he decision to prosecute hinged solely on the Figueroa's sketch and eyewitness identification." ECF 59, PgID 898. Plaintiff never suggested that Defendant had reason to believe that Figueroa lied at the time of the arrest. *See* ECF 64, PgID 1197–98. Thus, for Plaintiff to show that his arrest lacked probable cause, Figueroa's identification must have been unreliable. *See Ouza*, 969 F.3d at 282 (citing *Ahlers*, 188 F.3d at 370–71).

But Plaintiff cannot show that Defendant had reason to believe that Figueroa's identification was unreliable at the time of the arrest. For one, Plaintiff offered no argument about the identification lacking reliability. *See* ECF 64, PgID 1196–99; *Ahlers*, 188 F.3d at 371 ("Plaintiffs would have to allege that the [officers] had reason to think that [the victim's] eyewitness identification was in some way untruthful or unreliable. Plaintiffs, however, put forth no such allegations.").

For another, Figueroa's identification was reliable at the time. Although other witnesses did not describe the shooter the same as Figueroa, those witnesses did not see the shooting. ECF 59-6, PgID 693; ECF 59-7, PgID 697. And although Barley did not identify Plaintiff in the photo array, ECF 64-13, PgID 1286, her descriptions of the suspect largely tracked Figueroa's descriptions. *Compare* ECF 59-4, PgID 957 *and* ECF 59-5, PgID 960, *with* ECF 59-11, PgID 976 *and* ECF 59-12, PgID 979. And the anonymous tips, at best, conflict with one another but the second tip does match

11

the suspect with Plaintiff's nickname. *Compare* ECF 64-8, PgID 1224 (FBI tip), *with* ECF 59-9, PgID 971 (second tip explaining that the suspect is "Sousa") *and* ECF 59-27, PgID 1080 (Plaintiff explaining that his nickname is "Sosa"). Although Figueroa was the only eyewitness to identify Plaintiff as the shooter, ECF 64-2, PgID 1202–03; ECF 59-10, PgID 973, the composite sketch tracked Plaintiff's appearance, ECF 59-29, PgID 1095 (prosecutor agreeing that the composite sketch looked like Plaintiff). *See also* ECF 59-12, PgID 979.

Last, the Sandoval evidence does not undermine the reliability of Figueroa's identification; it merely provides a motive for the shooting. ECF 64, PgID 1190 (Plaintiff characterizing the Sandoval evidence as "withheld motive evidence"). Because the evidence does not diminish the identification's reliability, the identification supported by the composite sketch are enough to establish probable cause. *See Penn v. Bergtold*, 803 F. App'x 900, 905 (6th Cir. 2020) ("It is well established that '[a] law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest.'") (alteration in original) (quoting *Ahlers*, 188 F.3d at 370).

In sum, no constitutional violation occurred because Defendant had probable cause to charge Plaintiff based on Figueroa's identification and the composite sketch. The Court will therefore grant summary judgment to Defendant on the malicious prosecution and fabricating evidence claim.

II.    _Brady_ Claims[5]

Prosecutors may not suppress evidence that "is material either to [the defendant's] guilt or . . . punishment." _Brady v. Maryland_, 373 U.S. 83, 87 (1963). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." _United States v. Bagley,_ 473 U.S. 667, 682 (1985). A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." _Id._

A _Brady_ claim has three elements: (1) the evidence at issue must favor "the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) the criminal defendant must have suffered prejudice. _Strickler v. Greene,_ 527 U.S. 263, 281–82 (1999).

For the second element, Police officers must turn over all material evidence to the prosecutor's office. _Sykes_, 625 F.3d at 319 (noting that police officers may be sued under § 1983 for _Brady_ violations) (citing _Moldowan v. City of Warren_, 578 F.3d 351, 381 (6th Cir. 2009)). "That duty is discharged once an officer delivers such evidence to the prosecutor's office." _Army v. Collins_, 488 F. App'x 987, 962 (6th Cir. 2012) (citing _Moldowan_, 578 F.3d at 381).

---

[5] Plaintiff's _Brady_ claims are best described as _Giglio_ claims because the evidence largely undermines witness credibility. _Giglio v. United States_, 405 U.S. 150, 154 (1972); _see_ ECF 64, PgID 1193 ("[A]ny evidence that could impugn the credibility of Barley and Figueroa's identifications would be critical to establishing reasonable doubt."). The Court will refer to the claims as _Brady_ claims, because the parties used that term in the briefing.

Plaintiff alleged three *Brady* violations. ECF 1, PgID 14–15. First, Defendant did not disclose Shawn Lindsey's statement. *Id.* at 14.[6] Second, Defendant did not disclose that "he knew the shooting was orchestrated as a hit by . . . Sandoval." *Id.* at 14–15; *see also* ECF 64, PgID 1181. Third, Defendant failed to disclose that he fabricated Figueroa's and Barley's identifications of Plaintiff. ECF 1, PgID 15; *see also* ECF 64, PgID 1181.

Defendant offered three arguments for why the claims fail. One, any motive evidence did not "undermine[] the [S]tate's theory of the case" and was thus not *Brady* evidence (first element). ECF 59, PgID 891. Two, the allegedly withheld evidence was not exculpatory (first element). *Id.* at 891–93.[7] And three, Defendant provided the evidence to the prosecutor's office (second element). *Id.* at 889–91, 894. The Court will address the two remaining *Brady* claims in turn.

A.    *Sandoval Evidence*

The Court will deny summary judgment on the *Brady* claim about the Sandoval evidence. Defendant received several pieces of evidence about Sandoval. Some evidence came as witness statements. ECF 59-4, PgID 957; ECF 59-5, PgID 960–61; ECF 59-7, PgID 697. One statement from Barley explained that she felt

---

[6] Plaintiff withdrew the first claim. ECF 64, PgID 1180 n.6. The claim is therefore abandoned. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases).

[7] Even if the evidence were not exculpatory, as stated above, prosecutors must disclose evidence that "could be used to impeach the credibility of a witness." *Schledwitz v. United States*, 169 F.3d 1003, 1011 (6th Cir. 1999) (citing *Giglio*, 405 U.S. at 154–55). The second argument therefore addresses only part of the first element.

threatened from Sandoval because he had wanted his car back. ECF 59-5, PgID 960–61.

Defendant also received a tip from the FBI that confirmed how two witnesses described the shooter. *Compare* ECF 64-8, PgID 1224, *with* 59-4, PgID 956, ECF 59-5, PgID 960, *and* ECF 59-6, PgID 963; *see also* ECF 64-29, PgID 1628. The tip also verified the ICE agent's tip that the shooting was drug related. *see also* ECF 64-29, PgID 1628.

Defendant knew that Sandoval dealt heroin in Detroit. ECF 64-10, PgID 1240. And sources confirmed to Defendant that Sandoval hired a hitman for the shooting because Figueroa had stolen heroin from him. ECF 64-24, PgID 1428. Defendant even believed that Plaintiff had worked as the hitman for Sandoval. ECF 64-10, PgID 1242. Yet Defendant knew that the cellphone data showed Plaintiff and Sandoval did not contact one another. *Id.* at 1242–43.

What is more, the GPS tracking and cellphone data showed Sandoval was in the immediate area of the shooting when it occurred. ECF 64-21, PgID 1400–01; ECF 64-19, PgID 1383. And despite the evidence, Defendant did not want to know more about the Title III wiretap on Sandoval. ECF 64-24, PgID 1428.

The Sandoval evidence satisfies the first *Brady* element because the evidence undermines the State's theory of the case. The prosecutor in the criminal case even admitted that she would have turned over the evidence under *Brady* and that the evidence would have undermined her theory of the case. ECF 64-27, PgID 1529. To compare, the Sixth Circuit has held that the *same* admissions from a prosecutor

15

created "sufficient evidence for a reasonably jury to conclude that" a *Brady* violation occurred. *Sykes*, 625 F3d at 321. Besides that, the evidence would have impeached the star witnesses about their drug trade connections to Sandoval. ECF 64-29, PgID 1629. The evidence would have also marred Defendant's own credibility and questioned his investigation. *Id.* Even though the evidence did not exonerate Plaintiff, it crushed the credibility of key witnesses and it very likely would have changed the jury's verdict. To confirm, "[t]his was not a case where the evidence against [] Plaintiff[] was strong." *Sykes*, 625 F.3d at 321. It turned on eyewitness identification and a distorted investigation. The evidence thus satisfies the first *Brady* element.

As for the second *Brady* element, there is an issue of material fact that precludes the Court from granting summary judgment. The prosecutor in the criminal case claimed that she did not receive the Sandoval evidence from Defendant. ECF 64-27, PgID 1526, 1529, 1536, 1539–40; ECF 64-24, PgID 1430. And she could not recall specific discussions with Defendant about Sandoval. ECF 64-27, PgID 1528.

Defendant, in contrast, testified that he turned over all the Sandoval evidence. ECF 64-10, PgID 1242–43. Defendant also pointed to an internal memorandum from the prosecutor that Defendant claimed showed the prosecutor "was well-apprised of the Sandoval connection." ECF 59, PgID 891 (citing ECF 59-34, PgID 1144). But the internal memorandum was written *after* Plaintiff's conviction. ECF 59-34, PgID 1144.

Still, Defendant believed that Sandoval's identity and his relationship to the case were disclosed to Plaintiff's trial counsel through witness statements. ECF 59-

16

4, PgID 957; ECF 59-5, PgID 960–61; ECF 59-7, PgID 697. To that end, the prosecutor testified that she also knew Sandoval may have been behind the shooting. ECF 64-27, PgID 1546, 1559–60. But the prosecutor also testified that she knew of no evidence that Sandoval was the shooter. *Id.* at 1560. And the witness statements confirm that much. ECF 59-4, PgID 957; ECF 59-5, PgID 960; ECF 59-7, PgID 697. All told, there is an issue of material fact over the second *Brady* element about whether Defendant disclosed all or some of the Sandoval evidence to the prosecutor.

The Court cannot therefore find whether Defendant violated Plaintiff's constitutional rights by withholding the *Brady* evidence. A genuine issue of material fact exists about whether Defendant provided the prosecutor with the *Brady* evidence. As a result, the Court cannot grant qualified immunity on the first prong and a jury must resolve it.

The Court cannot grant qualified immunity on the second prong either. Even if a jury were to find that Defendant did not turn over the evidence to the prosecutor —thus violating Plaintiff's constitutional rights—the Court would still deny qualified immunity to Defendant because such a violation was clearly established at the time. Before Defendant's investigation, the Sixth Circuit clearly established that "the police can commit a constitutional deprivation analogous to that recognized in *Brady*." *Moldowan*, 578 F.3d at 379; *see also Sykes*, 625 F.3d at 320 (applying the same doctrine to *Giglio* evidence that could be used to impeach a witness's credibility) (quotation omitted). Because the alleged constitutional violation here is the same as

*Moldowan* and *Sykes*, Defendant would have no right to qualified immunity under the second prong.

In the end, the Court cannot grant qualified immunity under either prong. For the first prong, an issue of material fact precludes the Court from granting qualified immunity. For the second prong, even if a jury were to resolve the factual issue in Plaintiff's favor, the constitutional violation would have been clearly established when it occurred. The Court will therefore deny summary judgment as to this claim and reserve any qualified immunity decision until a jury resolves the remaining factual issue.

### B.    *Fabricating Identifications*

The Court will grant summary judgment on the claim that Defendant fabricated identifications. Four reasons support granting summary judgment.

First, Plaintiff offered no evidence to show that Defendant fabricated the identifications. *See* ECF 64. Indeed, no evidence showed Defendant fabricated any witness identification. At best, Plaintiff appeared to argue that Defendant showed witnesses unduly suggestive photo arrays. *Id.* at 1191–92.

But such a claim would not arise under *Brady*; it would arise under a § 1983 claim for due process violations under the Fourteenth Amendment. *See Salter v. Olsen*, ---F. Supp. 3d---, 2022 WL 1819033, at *9–16 (E.D. Mich. 2022) (analyzing an unduly suggestive identification claim separate from a *Brady* claim). Consider too that Plaintiff offered no argument to suggest the claim hinges on unduly suggestive photo arrays. *See generally* ECF 64. Yet Plaintiff appeared to assert the argument

only *after* the Court had requested supplemental briefing about whether Plaintiff is collaterally estopped from challenging the photo arrays as unduly suggestive. ECF 68, PgID 1743–44; *see* ECF 67, PgID 1729–30. The claim is therefore abandoned. *See Brown*, 545 F. App'x at 372 (collecting cases).

Third, even if the claim were not abandoned, the Michigan Court of Appeals already held that the photo arrays were not unduly suggestive. *Ansari*, 2015 WL 630388, at *2–3. And the Michigan Court of Appeals' extensive inquiry is correct based on the Court's review of the law. Thus, the Court will adopt the Michigan Court of Appeals' reasoning.

Last, even if the photo arrays were too suggestive, the claim still fails. The two witnesses that had identified Plaintiff in the photo array later identified him again in a live lineup—that Defendant's counsel attended—and in court. ECF 59-16, PgID 1014, 1017–18; 1022–23, 1025–27. Thus, "under the totality of the circumstances," the pretrial identification "was nonetheless reliable." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001) (citation omitted). The Court will therefore grant summary judgment on the final claim.

## CONCLUSION

Because only the *Brady* claim related to the Sandoval evidence remains, the Court will refer the parties to mediation with Mr. Dennis Barnes. The mediation must occur no later than September 25, 2022. The alleged *Brady* violations were egregious and could shock the sensibilities of a federal jury. The Court expects both parties to mediate in good faith. The Court will also set the jury trial for March 2023.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the summary judgment motion [59] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. Dennis Barnes[8] for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions must occur **no later than September 25, 2022**. The parties must contact Mr. Barnes and provide him with a copy of this order as soon as practicable and must **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Barnes must **NOTIFY** the Court within seven days of completion of the mediation, "stating only the date of completion, who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties must **NOTIFY** the Court right after completing the mediation and must **SUBMIT** a proposed order of dismissal within twenty-one days. *Id.* at 16.4(e)(7). If a settlement is not reached, the parties must **NOTIFY** the Court within five days of the completion of the mediation.

---

[8] Mr. Barnes can be reached by phone at (248) 736-4828 or by email at Dennis@BarnesADR.com.

**IT IS FURTHER ORDERED** that the final pretrial conference is **SET** for February 22, 2023, and the trial is **SET** to begin on **March 7, 2023**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 23, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 23, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

21