# EXHIBIT 3

Valerie Newman
10/11/2021

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2            FOR THE EASTERN DISTRICT OF MICHIGAN
 3                     SOUTHERN DIVISION
 4
 5   ALEXANDRE ANSARI,
 6              Plaintiff,
 7     vs.                        Civil Action
 8                                No. 2:20-cv-10719-SJM-DRJ
 9                                HON. STEPHEN J. MURPHY, III
10   MOISES JIMENEZ, in his
11   individual capacity, and the
12   CITY OF DETROIT, a municipal
13   corporation, Jointly and Severally,
14              Defendants,
15   _____/
16    PAGES 1 TO 265
17
18     The Deposition of VALERIE R. NEWMAN,
19     Taken at 2 Woodward Avenue, 5th Floor,
20     Detroit, Michigan,
21     Commencing at 10:11 a.m.,
22     Monday, October 11, 2021,
23     Before Dale E. Rose, CSR-0087.
24
25
```

Page 186

1  report that identifies Officer Algarrafi as an
2  officer investigating this file and this is the
3  only report that also identifies Lindsey as a
4  witness isn't it logical to assume that anybody
5  who has identified Mr. Algarrafi as a witness
6  also was aware of this report?
7          MR. MUELLER: Objection, foundation.
8          MR. O'NEILL: Objection, join in and
9  add that the witness is not here to make
10 assumptions, but you can answer if you can.
11 A. I don't know.
12 BY MS. BRUENING:
13 Q. Let me be more direct. You said that you spoke
14 to defense counsel who represented Ansari in the
15 underlying criminal file, right?
16 A. Yes.
17 Q. And he tried to tell you that he didn't know
18 about this witness Shawn Lindsey, is that
19 correct?
20 A. Yes.
21 Q. Were you aware that he called Officer Algarrafi
22 as a witness at Mr. Ansari's trial?
23 A. I don't recall.
24 Q. Did you ever review any of the trial transcripts
25 in the underlying matter?

Page 187

1  A. A long time ago.
2  Q. Did you ever review any of the motion hearings or
3  the motions or anything like that, any of the
4  pleadings leading up to the trial?
5  A. Probably not much.
6  Q. Did you ever obtain a copy of the file that the
7  defense attorney kept?
8  A. I'm trying to think, I remember talking with
9  Mr. Karafa. I don't remember. I know we talked
10 to him, I'm sure we asked for the file, but I
11 don't recall.
12 Q. If you had obtained a copy of that file would
13 that have been digitized and saved as part of the
14 CIU investigative materials?
15 A. Not necessarily. Often times we will look
16 through a file and only digitize what we think is
17 relevant and then give it back.
18 Q. And that's based on your subjective opinions of
19 what's relevant, correct?
20 A. Correct.
21 Q. And you don't know in this case if you guys --
22 and by that I mean CIU -- obtained a copy of
23 Mr. Karafa's file?
24 A. I don't want to say, I don't recall.
25 Q. Are you able to identify as we sit here today any

Page 188

1  specific documents that you know of that
2  Mr. Karafa did not receive?
3  A. Definitively, no.
4  Q. Did you document any interviews that you had with
5  Mr. Karafa?
6  A. We talked to him. I don't know that we would
7  call it an interview. I don't know if it was
8  documented. If it was documented it would be in
9  the file.
10 Q. I apologize, I've got to jump all around because
11 Ms. Crittendon was extremely thorough. So you
12 said earlier that the CIU, one of its guiding
13 principles is that you need to have some evidence
14 of -- some new evidence, right, to establish
15 innocence, correct?
16 A. Correct.
17 Q. In this case what new evidence did you find that
18 led to the conclusion that Ansari was innocent?
19 A. Well, like in most cases it's a combination of
20 what existed originally and then what the new
21 evidence is.
22         So we started from the position in
23 reading the reports where pretty much everyone
24 described the guy as a big guy, maybe 300 pounds,
25 and that's definitely not Ansari. And then we

Page 189

1  kind of worked backwards to try and figure out
2  what was going on.
3          And so I would say the new -- I mean
4  the new evidence in this case is primarily what
5  it appears that officer Jimenez was not
6  forthright about and motivations to pin it on
7  somebody else whose was kind of disposable rather
8  than trying to track down -- there was a lot of
9  information here that points to something going
10 on in terms of Rosalind Barley and her family
11 members being targeted and her relationship with
12 Sandoval.
13 Q. Have you read the witness statements that were
14 created in the underlying criminal investigation?
15 A. Not all of them, but yes, I read them.
16 Q. Were you aware that Barley disclosed her
17 relationship with Sandoval and the prior assaults
18 and threats on her life?
19 A. Yes.
20 Q. And those were in the possession of the
21 prosecutor, were they not?
22 A. They were.
23 Q. So on what basis are you saying that Jimenez
24 withheld this information when it was right there
25 in black and white on the witness statement?

48 (Pages 186 to 189)