UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDRE ANSARI,

           Plaintiff,

v.

MOISES JIMENEZ,

           Defendant.

Case No. 2:20-cv-10719

HONORABLE STEPHEN J. MURPHY, III

**OMNIBUS OPINION AND ORDER**

Plaintiff Alexandre Ansari was convicted of murder in State court, and his conviction was later vacated, ECF 75-1, PgID 1909, in part, because the Wayne County Conviction Integrity Unit determined that there was "an abundance of new evidence demonstrating [Plaintiff's] innocence." ECF 64-19, PgID 1387. Plaintiff Alexandre Ansari then sued Defendant Moises Jimenez for violating his Fourteenth Amendment right to due process of law. ECF 1, PgID 14–15. Specifically, Plaintiff alleged that Defendant knowingly or recklessly failed to turn over exculpatory evidence to the Wayne County Prosecutor's Office as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *Id.* Trial is set for June 20, 2023. ECF 84. Defendant filed several motions in limine. *See* ECF 95; 96; 97; 98; 99; 101; 102; 103. In the present Order the Court will address all but ECF 102, which was resolved in a previous Order. Motions may be renewed at trial if context supports a renewal.

1

## LEGAL STANDARD

I. <u>Motions in Limine</u>

"[M]otion[s] in limine [are] an important tool available to a trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). And "[b]y making evidentiary rulings ahead of trial, the Court can facilitate wise preparation by the parties and prepare a smooth path for trial—particularly by casting aside inadmissible evidence that might confuse or prejudice the jury." *Dixon v. Grand Trunk W. R.R. Co.*, No. 2:13-14340, 2017 WL 5166868, at *1 (E.D. Mich. Nov. 8, 2017) (Murphy, J.) (citation omitted).

II. <u>Relevancy</u>

Federal Rule of Evidence 104(a) requires the Court to "decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Evidence must be relevant to be admissible. Fed. R. Evid. 402; *Old Chief v. United States*, 519 U.S. 172, 178 (1997). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. But the Court may still "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis." *Old Chief*, 519 U.S. at 180 (quotation omitted).

**DISCUSSION**

Defendant moved to exclude: (1) evidence that he was investigated by the Detroit Police Department, ECF 95; (2) any argument for punitive damages, ECF 96; (3) evidence about the importance of the due process clause, ECF 97; (4) evidence that he violated two policies of the Detroit Police Department, ECF 98; (5) improper testimony of a putative expert, ECF 99; (6) improper argument that would tend to inflame the passions of the jury, ECF 101; and (7) evidence that the City of Detroit recognized Plaintiff was wrongfully imprisoned and apologized to him, ECF 103. The Court will address each motion in turn.

I. <u>Warrants, Internal Investigation, and Termination Evidence [95]</u>

Defendant stated that "Plaintiff has indicated [] he will [] offer evidence and argument regarding the following": (i) the "[Detroit Police Department] was going to seek disciplinary action against Jimenez"; (ii) the "[Detroit Police Department] submitted a warrant request to the Wayne County Prosecutor's Office, seeking a determination as to whether Jimenez should be charged criminally based on information provided by the [Conviction Integrity Unit]"; and (iii) "Defendant retired from the police department rather than be disciplined." ECF 95, PgID 2293. Defendant then argued that "[a]ny evidence or testimony regarding these three subject areas should not be allowed" *Id*. He claimed that evidence or testimony in the three subject areas described above was barred by Federal Rules of Evidence 403, 407, 602, 609, 701, and 703. *Id*. at 2294. The Court will address each subject area in turn.

3

### A. Disciplinary Action

Defendant argued that Lieutenant Marc DeLuca, who directed the investigation against Defendant, cannot testify about the conclusions of the investigation under Federal Rules of Evidence 602 and 701 because his conclusions are "*not* based on his own personal knowledge or perception, but rather, [are] based on misrepresentations made to him by the [Conviction Integrity Unit]." ECF 95, PgID 2297. Under Federal Rule of Evidence 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." And under Federal Rule of Evidence 701, a lay witness may only "testi[fy] in the form of an opinion is limited to one that is . . . rationally based on the witnesses' perception."

Here, it appears that Lieutenant Marc DeLuca may have personal knowledge of many facts of the case. *See* ECF 113, PgID 2676. After all, he was the officer in charge of investigating Defendant. ECF 95, PgID 2296. It is thus reasonable to assume that he will have personal knowledge about the course, conclusion, and results of the Detroit Police Department's investigation. The Court will therefore deny the motion, but Defendant may object if Lieutenant Marc DeLuca testifies about facts not within his personal knowledge.

### B. Warrant Request

Defendant moved to exclude evidence that the Detroit Police Department "presented a request for a warrant [for his arrest] to the [Wayne County Prosecutor's Office]." ECF 95, PgID 2295. Defendant conceded that the evidence was relevant, but

4

he nonetheless argued it should be excluded under Rule 403 because the danger of unfair prejudice outweighed the probative value. *Id.* at 2295. Defendant supported his argument with two facts. First, he argued that "presentment [of a request for a warrant] was done pursuant to [Detroit Police Department standard operating procedures] and does not, in itself, establish that anyone employed by [the police department] determined that Defendant Jimenez's alleged misconduct should be reviewed by the Prosecutor's Office." *Id.* Second, he argued that "[t]here is also a significant risk that a jury might conclude that [the police department's] seeking prosecutorial review constitutes evidence of wrongdoing by [Defendant] which would prejudice him." *Id.*

The Court agrees. While the Court has not independently reviewed the relevant standard operating procedures of the Detroit Police Department (because neither party attached them as an exhibit), Defendant explained that it is standard procedure to present a request for a warrant to the Wayne County Prosecutor's Office when an officer is determined to have violated the normal procedures of an investigation. *Id.* at 2295. Thus, mere evidence that a warrant was requested is only marginally probative of whether Defendant withheld the disputed evidence.

Besides, there is a danger that the jury will review the request for a warrant and conclude that Defendant acted wrongfully based only on the existence of the warrant. The Court is concerned that the jury will be distracted by evidence that is shaky in nature and that evidence of the warrant request may lead to a time-consuming sideshow about a mere administrative act. And evidence with low

5

probative value and a danger of confusing the issues or wasting time is inadmissible under Federal Rule of Evidence 403. Had the warrant request been granted and the Defendant arrested, the Court might find differently. But at this point, the violation of policies is not dispositive of Defendant's liability, and it is likely that the Detroit Police Department requested a warrant as a matter of course and not necessarily because it believed Defendant had acted in a criminal manner. The Court will therefore grant the motion in limine and exclude evidence of the request for a warrant.

C. *Retired*

Last, Defendant sought to exclude "evidence regarding the fact that [Defendant] retired from [the Detroit Police Department] after a recommendation for discipline was made by [the Detroit Police Department]." ECF 95, PgID 2297. Defendant claimed that such evidence is "inadmissible pursuant to [Federal Rule of Evidence] 403" and "is [in]admissible as a subsequent remedial measure [under Federal Rule of Evidence 407]." *Id.* at 2298. Defendant did not explain why the evidence should be excluded under Rule 403. *See* ECF 95. Plaintiff responded that the evidence is admissible for impeachment purposes because "Defendant asserted that he didn't retire because of any pressure from [the Detroit Police Department . . . [h]owever, he subsequently filed suit against the City claiming he was basically forced to retire." ECF 113, PgID 2676. In short, Plaintiff claimed that Defendant will testify he did not leave the Detroit Police Department under pressure. *Id.* But if that is his testimony, then evidence that Lieutenant Marc Deluca

6

recommended that Defendant be disciplined is proper impeachment evidence. Evidence that Lieutenant Deluca recommended he be disciplined would tend to show that Defendant did leave the Detroit Police Department under pressure contrary to his testimony. And the probative value of the evidence on the issue of Defendant's credibility is not substantially outweighed by any of the dangers Rule 403 is intended to prevent. Moreover, the evidence is not barred by Rule 407 because evidence of a "subsequent remedial measure" is explicitly allowed "for another purpose, such as impeachment." Fed. R. Evid. 407. The Court will therefore deny the motion.

II.     Punitive Damages [96]

Defendant argued that "Plaintiff's request that the jury be allowed to consider awarding him punitive damages should be disallowed." ECF 96, PgID 2309. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). If a plaintiff proves that a defendant's conduct triggers consideration of punitive damages, the jury may make a "discretionary moral judgment" whether punitive damages are warranted. *Id.* In exercising its discretion, the jury must consider that "[t]he purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986).

Defendant argued that "Plaintiff has failed to illustrate through admissible proof outside of speculation or allegation that the conduct of Defendant Jimenez was

7

either motivated by evil motive or intent or involved reckless or callous indifferent to the federally-protected rights of Plaintiff." ECF 96, PgID 2311. But Plaintiff presented considerable evidence that Defendant withheld *Brady* and *Giglio* evidence from the prosecutor so that Plaintiff would be wrongfully convicted. Indeed, the Wayne County Conviction Integrity Unity stated that "Jimenez has now admitted to deliberately avoiding available investigative methods as to [other possible suspects]," and Defendant's "bias" "distorted every aspect of the truth-finding process." ECF 64-19, PgID 1394. Besides, testimony from agents at the Drug Enforcement Agency, Federal Bureau of Investigation, and Wayne County Prosecutor's Office may be sufficient to support a reasonable inference that Defendant acted willfully and maliciously. *See Smith*, 461 U.S. at 56. In sum, the Court cannot determine that an instruction on punitive damages is improper without reviewing the evidence and testimony at trial. The Court will therefore deny the motion; Defendant may raise his objection to a punitive damage argument or instruction at the close of evidence.

III. <u>Importance of Constitutional Rights Argument [97]</u>

Defendant moved to "preclude[] [Plaintiff] from asserting an amount of damages based on the value or importance of the constitutional right at stake in th[e] [case]." ECF 97, PgID 2322. "The basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Stachura*, 477 U.S. at 307 (cleaned up). Consequently, "the abstract value of a constitutional right may not form the basis for § 1983 damages." *Id.* at 308. The Court will therefore grant the motion. Plaintiff may only request that the jury award him

8

an amount of damages that fits the injury he suffered and, if the requisite intent is proven, punitive damages. *Stachura*, 477 U.S. at 307. He may not appeal to the general importance of the Fourteenth Amendment and due process of law to determine the amount of damages.

IV.     Police Manual Provisions Evidence [98]

Defendant argued that the Court should exclude evidence that he violated two Detroit Police Department policies. ECF 98, PgID 2333 ("It was determined that Detective Jimenez violated the following DPD policy: '(1) 102.3-6.15, Code of Conduct-Miscellaneous: Neglect of duty' and '(2) 102.3-6.09 Conduct, Unprofessional: (6) Failure to exercise discretion during any department or criminal investigation.'"). Defendant claimed that the Court should exclude evidence that he violated the two policies because "violation of a policy does not establish a constitutional violation, and because such evidence [and] testimony is irrelevant and more prejudicial than probative and would be misleading to the jury and confusing on the issues." ECF 98, PgID 2334 (alterations omitted).

It is true that "[a]llegations that a[n] official failed to follow an internal [] policy are not sufficient to support a constitutional claim." *Black v. Parke*, 4 F.3d 442, 4448 (6th Cir.1993). But relevant evidence is admissible, and evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401; *See* Fed. R. Evid. 402. Evidence that Defendant violated two Detroit Police Department policies is not irrelevant simply because the violations do not, standing alone, prove a due process violation. Indeed, evidence that the

9

Detroit Police Department found that Defendant's investigation of the case violated its policies is highly relevant to and probative of Plaintiff's claim that the investigation Defendant helmed was constitutionally deficit. Besides, the evidence is not substantially outweighed by a danger of misleading the jury or confusing the issues. *See* Fed. R. Evid. 403. Defendant did not explain how evidence that he violated Detroit Police Department policies would mislead the jury or confuse issues. *See* ECF 98. And he did not explain why an instruction from the Court that the violation cannot, standing alone, establish a violation of the Fourteenth Amendment would not cure any potential confusion the jury experienced. *See id.* Thus, the Court will deny the motion. Upon request, the Court will instruct the jury that violation of a police manual policy does not, standing alone, establish a constitutional violation.

V.  Expert Testimony [99]

Defendant contended that one of Plaintiff's experts, Dr. Gerald Shiener, will "testify about [Plaintiff's] emotional and mental distress." ECF 99, PgID 2346. Defendant claimed that "[i]n prior cases, Dr. Shiener has brought a number of [] residents [from the hospital where he works] to the courtroom, when he is testifying." *Id.* According to Defendant "[h]e will then point out the residents and will attempt to enhance his own credibility by providing testimony about how he is teaching his residents how to testify as an expert." *Id.* Defendant moved to exclude "any comments from attorneys as to who is sitting in the courtroom or any testimony or reference by a witness as to who is sitting in a courtroom" because it "is not relevant." *Id.*

The Court will grant the motion because it is irrelevant who, if anyone, is in the gallery of the courtroom and "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Plaintiff's attorney may not elicit testimony, present argument, or draw the jury's attention to any member of the public that is in the gallery. Plaintiff must strive to keep the expert from testifying about any matter that is not relevant. Defendant may object at trial if he believes any testimony of the witness is irrelevant or otherwise inadmissible.

VI. Golden Rule and Reptile Theory [101]

Defendant moved to bar Plaintiff from offering three categories of argument: (i) "evidence, argument or comment which violates 'the golden rule'"; (ii) "'reptile theory' evidence, argument, or comment"; (iii) "inflammatory statements, questioning[,] and testimony regarding liability." ECF 101, PgID 2357. The Court will address each category of argument in turn.

First, the Court will preclude Plaintiff from offering evidence, argument, or comment which violates the golden rule. The Sixth Circuit has held that "[a]sking jurors to place themselves in the victim's shoes violates the ban on Golden Rule arguments." *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020). To be sure, Plaintiff agreed that "Plaintiff's counsel will not invoke the 'Golden Rule' in questioning []or argument." ECF 104, PgID 2416. The Court will therefore grant the motion in limine as to the Golden Rule issue. Golden rule argument, evidence, or comments are inadmissible at trial.

11

Second, the Court will deny the motion to preclude reptile theory evidence, argument, or comment. "'Reptile Theory' is a method of persuading jurors to find in a plaintiff's favor by invoking the primal (or reptilian) part of jurors' minds, which drives them to act to protect themselves or their community." *Aurigemma v. Costco Wholesale Corp.*, No. 3:18-CV-1719, 2023 WL 197044 (D. Conn. Jan. 17, 2023). Defendant argued that "[d]uring the deposition of Defendant Moises Jimenez, Plaintiff's Counsel asked several 'reptile theory' questions about increased risk to the community caused by purported violations of principles or 'safety rules,' that differ from the applicable legal standards." ECF 101, PgID 2360. But the deposition excerpts do not suggest Plaintiff intends to "show[] the jury that the [D]efendant's conduct represents a danger to the survival of the jurors and their families." *Id.* at 2361 (quotation omitted). The deposition excerpts merely show that Plaintiff was establishing that Defendant knew how to conduct an investigation and knew how to properly handle *Brady* and *Giglio* evidence. *See id.* at 2360–61. Moreover, it is unclear that the reptile theory of advocacy is identical to the golden rule argumentation, which is clearly barred. *See e.g., Aurigemma*, 2023 WL 197044 ("[W]ith respect to the 'Reptile Theory' arguments, the court acknowledges that arguments should not inappropriately incite a jury to make a determination on an improper basis, but it is not clear that all 'Reptile Theory' arguments would run afoul of that maxim.").

Because the deposition excerpts that Defendant cited are innocuous, and Defendant did not fully explain what argument, testimony, or evidence that Plaintiff intends to offer will impermissibly "appeal to the passion, prejudice, and sentiment

12

of the jury," the Court will preliminarily deny the motion in limine as to the Reptile Theory issue. *Id.* at 2361 (citation omitted); *see United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991) ("Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible."). The Court will warn Plaintiff, however, that he must not impermissibly inflame the passion of the jury or appeal to the "conscience of the community." *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020).

Third, the Court will grant the motion in limine and preclude any "inflammatory" argument, evidence, or testimony because Sixth Circuit case law bars such argument or testimony. *See Solivan*, 937 F.2d at 1151.

VIII. <u>Awards and Pin Evidence [103]</u>

Defendant moved "to preclude Plaintiff from presenting evidence, argument, or comment from any source whatsoever, regarding Plaintiff's or Plaintiff's Counsel's receipt of any recognition or awards from City Council, Church[,] or Community Groups." ECF 103, PgID 2413. Plaintiff responded that the evidence is relevant because "Plaintiff has suffered emotional distress not only during the period of his incarceration, but during the progress of this lawsuit." ECF 108, PgID 2542. The evidence is relevant to the issue of damages. Plaintiff was wrongfully imprisoned for six years, and the Detroit City Counsel apologized for the injustice. The award is evidence that Plaintiff's "emotion distress is real." *Id.*

The Court will nevertheless exclude the evidence under Federal Rule of Evidence 403 because its probative value is substantially outweighed by a danger of

13

misleading the jury or confusing the issues. The evidence shows that the Detroit City Council believed Plaintiff suffered emotional damages. The evidence is therefore not very probative, especially when compared with testimony of Plaintiff and an expert psychologist—both of which Plaintiff will offer. In contrast, there is a great danger that the evidence will confuse the jury and mislead them into ruling for Plaintiff because he was wrongfully convicted. The present case is about whether Defendant failed to turn over *Brady* and *Giglio* evidence, not whether Plaintiff was wrongfully imprisoned—a fact that has already been determined. *See* ECF 86, PgID 2011. Because "City Council stress[ed] that [Plaintiff] w[as] wrongfully convicted" and "formally apologized" to him with a ceremony and award, there is danger that the evidence will confuse the issues. The Court will therefore exclude the evidence under Rule 403.

Defendant also stated that "Mr. Mueller and Plaintiff should be precluded from wearing any memento bestowed upon them by any[]body as a symbol of their status as exonerees or as recognition for working with exonerated individuals." ECF 103, PgID 2412. The Court will not instruct Mr. Mueller or Plaintiff on what they may wear to trial because Defendant did not explain whether the Court can direct the details of Plaintiff and Mr. Mueller's attire. *See id.* at 2412–13. The Court will, however, reiterate that testimony, argument, or evidence that Plaintiff or Mr. Mueller won an award or commendation for their status as an exoneree or work with exonerees is irrelevant and inadmissible. Additionally, both parties should be mindful of the Court's practice guidelines, which instruct that "Counsel . . . are expected to be

dressed in business attire all the time" and witnesses must dress in "respectful attire."

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motions in limine [96], and [98] are **DENIED**.

**IT IS FURTHER ORDERED** that the motions in limine [97] and [99] are **GRANTED**.

**IT IS FURTHER ORDERED** that motions in limine [95], [101] and [103] are **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED.**

                                        s/ Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge

Dated: June 20, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 20, 2023, by electronic and/or ordinary mail.

                                        s/ Richard Loury
                                        Case Manager