UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDRE ANSARI,

          Plaintiff,

Case No. 2:20-cv-10719

HONORABLE STEPHEN J. MURPHY, III

v.

MOISES JIMENEZ,

          Defendant.
                                       /

## OMNIBUS OPINION AND ORDER

Plaintiff Alexandre Ansari was convicted of murder in State court, and his conviction was later vacated. ECF 75-1, PgID 1909. The vacation of the conviction occurred, in part, because the Wayne County Conviction Integrity Unit determined that there was "an abundance of new evidence demonstrating [Plaintiff's] innocence." ECF 64-19, PgID 1387. Plaintiff Alexandre Ansari then sued Defendant Moises Jimenez for violating his Fourteenth Amendment right to due process of law. ECF 1, PgID 14–15. Specifically, Plaintiff alleged that Defendant knowingly or recklessly failed to turn over exculpatory evidence to the Wayne County Prosecutor's Office as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *Id.* Trial is set to begin on June 20, 2023. ECF 84. Plaintiff filed several motions in limine. *See* ECF 87; 88; 89; 90; 91; 92; 116. The Court will address four in the present order: ECF 89; 91; 92; 116.

1

## LEGAL STANDARD

I. <u>Motions in Limine</u>

"[M]otion[s] in limine [are] an important tool available to a trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). And "[b]y making evidentiary rulings ahead of trial, the Court can facilitate wise preparation by the parties and prepare a smooth path for trial—particularly by casting aside inadmissible evidence that might confuse or prejudice the jury." *Dixon v. Grand Trunk W. R.R. Co.*, No. 2:13-14340, 2017 WL 5166868, at *1 (E.D. Mich. Nov. 8, 2017) (Murphy, J.) (citation omitted).

II. <u>Relevancy</u>

Federal Rule of Evidence 104(a) requires the Court to "decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Evidence must be relevant to be admissible. Fed. R. Evid. 402; *Old Chief v. United States*, 519 U.S. 172, 178 (1997). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. But the Court may still "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis." *Old Chief*, 519 U.S. at 180 (quotation omitted).

**DISCUSSION**

The Court will first address the motion to exclude evidence of the murder of Tommy Edwards, ECF 89. Next, the Court will decide the motion to exclude a memo prepared by prosecutor Tusar, EF 91; 116. Last, the Court will determine whether to exclude evidence of prior bad acts by Plaintiff, ECF 92.

I. <u>Murder of Tommy Edwards Evidence [89]</u>

Plaintiff moved to exclude evidence of the murder of Tommy Edwards because it was irrelevant and unfairly prejudicial. ECF 89. Tommy Edwards was the brother of Miguel Figueroa. *Id.* at 2064. He was murdered four days after Figueroa, Rosalind Barley, and Ileana Cuevas were attacked. *Id.* Plaintiff was charged with the murder, but a jury acquitted him. *Id.*

Plaintiff argued that any evidence or testimony of Tommy Edward's murder is irrelevant because the only issue of fact in the present case is whether Defendant turned over *Brady* and *Giglio* evidence to the prosecutor and he was never convicted of the murder of Tommy Edwards. *Id.* Defendant responded to the motion and argued that the evidence of Tommy Edwards' murder is relevant and admissible as impeachment evidence. ECF 105, PgID 2456. Defendant stated that Prosecutor Tusar prosecuted Plaintiff in the first murder trial, where he was convicted, and in a second murder trial of Tommy Edwards. Prosecutor Tusar is expected to testify that she did not receive the *Brady* and *Giglio* evidence until after Plaintiff was convicted in the first murder trial. But if true, that does not explain why she did not turn over the materials during post-trial motions in the first murder trial or throughout the second

3

murder trial. Thus, argued Defendant, the second murder trial is admissible evidence to impeach Prosecutor Tusar's credibility.

Both parties' arguments have merit. The Court will thus grant the motion in limine in part. Defendant may introduce the following evidence from the trial of Tommy Edward's murder to impeach Prosecutor Tusar: (1) evidence that the same *Brady* and *Giglio* evidence Defendant allegedly withheld was relevant to another trial that occurred after Plaintiff was convicted; (2) evidence that Prosecutor Tusar had the evidence before the second trial started; (3) evidence that Prosecutor Tusar did not turn the evidence over during the second trial. All other evidence of the Tommy Edwards murder trial, including the fact that Plaintiff was prosecuted for it, details of the investigation and prosecution, facts of the case, and anything that could unfairly prejudicial or a waste time, is excluded. *See* Fed. R. Evid. 403. In sum, Defendant may use the above-described evidence from the Tommy Edwards murder trial to impeach Prosecutor Tusar's testimony that she did not receive the disputed evidence until three weeks after Plaintiff's conviction. All other evidence of the murder of Tommy Edwards is inadmissible.

II. <u>Tusar Memo Evidence [91]; [116]</u>

Plaintiff moved to exclude a memorandum written by Wayne County Prosecutor Erika Tusar because "it constitutes hearsay and is irrelevant to the issues in the instant case."[1] ECF 91, PgID 2103. Defendant responded to the motion that

---

[1] Plaintiff initially moved in limine in ECF 91. But he later filed an amended motion, ECF 116, which sought the same result but included the entire Tusar Memo instead

4

"the Tusar Memo is extremely relevant and material evidence which tends to resolve this issue" and it is not hearsay. ECF 114, PgID 2734–35.

The disputed memo is nine paragraphs long. *See* ECF 116-2. The first paragraph stated that there were two murder cases pending against Plaintiff. *Id.* at 2764. Paragraphs two, three, four, and five described the facts and procedural history of the two murder cases. *Id.* Although conjecture, the memo discusses the facts of each case in definite terms. For example, in paragraph four the memo stated, "Defendant [Ansari] killed Mr. Figueroa's brother Edward Thomas."[2] *Id.* Paragraph six further implicated Plaintiff in the shootings by stating that "Defendant [Ansari] was known to the [FBI and DEA] and the crime stoppers information was specific as to [him] being the shooter." *Id.* Paragraph seven then discussed that "[t]here was a separate FBI investigation going on at this time [into Jose Sandoval]." *Id.* And paragraph seven described the Sandoval investigation and concluded that "because [the investigation] was over lapping with 'an undercover FBI situation' none of this was ever able to be disclosed." *Id.* at 2765. Paragraphs eight and nine concluded the memo by detailing a prosecution strategy and stating that "there is still an FBI investigation going on and there is a chance that the driver in the [second] shooting case may eventually be picked up." *Id.*

---

of merely the first page. *Compare* ECF 91-2, PgID 2119, *with* ECF 116-2, PgID 2764–65. Because the motions are otherwise identical, the Court will resolve them together.
[2] The definite statements of fact are relevant to the reliability of the memo because Plaintiff Ansari was acquitted of the murder of Tommy Edwards. ECF 89, PgID 2064.

The memo is therefore divided between (1) highly relevant information that is probative of whether Prosecutor Tusar knew of the allegedly withheld *Brady* and *Giglio* evidence and (2) irrelevant evidence about murder cases and criminal investigations that are highly prejudicial and not at issue in the present trial. *See id.* at 2764–65. Indeed, there is no probative value to paragraphs one through six, eight, or nine because none of them pertain to the facts at issue here. *Compare* ECF 116-2, *with* ECF 86, PgID 2012. And the irrelevant paragraphs are unfairly prejudicial because they describe Plaintiff as a murderer and detail the evidence against him at length.

Because the memo is divided between relevant, probative evidence and irrelevant, prejudicial evidence, the Court will receive, if offered, only the sections that are relevant and probative. Defendant may introduce only the title of the document, its caption, and paragraph seven, which begins on ECF 116-2, PgID 2764 with the phrase "There was a separate FBI investigation" and concludes on ECF 116-2, PgID 2765 with the phrase "none of this was ever able to be disclosed." The rest of the document is inadmissible and must be redacted. Defendant must submit a copy of the redacted memorandum to the Court's chambers for in camera review by email no later than June 19, 2023. Defendant must include Plaintiff on the email so that Plaintiff can certify that the ordered redactions have been made.

Plaintiff also argued that paragraph seven of the memo is inadmissible since "[t]he Tusar memo is hearsay, as it contains out-of-court statements Defendant seeks to offer for the truth of the matters asserted relating to the crucial FBI/DEA

6

investigation of Sandoval." ECF 91, PgID 2113 (citing Fed. R. Evid. 401). Defendant responded that "Tusar's memo is not being offered to prove 'the truth of the matter(s) asserted' in the memo, but rather, is being offered to establish that [Prosecutor Tusar] received the information from Detective Jimenez." ECF 114, PgID 2736. The truth of the matter asserted by paragraph seven of the memo is: (1) "[t]here was a separate FBI investigation"; (2) Rosalind Barley dated a previous boyfriend by the name of Jose Sandoval"; (3) Jose Sandoval was a "high ranking drug dealer"; (4) Jose Sandoval had an "altercation" with Rosalind Barley, which was the subject of a domestic violence case; (5) "Special Ops guys [] had information that [Plaintiff] was associated with Jose Sandoval"; (6) Sandoval was prosecuted in federal court; (7) "Mr. Edwards was also a ranking drug associate"; and (8) someone believed that the above seven statements "over lapp[ed] with 'an undercover FBI situation.'" ECF 116-2, PgID 2764–65. Defendant stated that he will offer the evidence to show that Prosecutor Tusar was aware of the *Brady* and *Giglio* evidence and not for the truth of the matter asserted in any of the statements. ECF 114, PgID 2736. It appears, then, that paragraph seven comprises non-hearsay statements. *See* Fed. R. Evid. 801. The Court will therefore grant in part and deny in part the motion in limine. Plaintiff may raise a hearsay objection at trial if paragraph seven is offered to show the truth of the matter asserted by paragraph seven.

III.   Bad Acts Evidence [92]

Plaintiff argued that "[a]t trial, it is expected that Defendant will use [] improper tactics and attempt to introduce evidence with no potential legitimate use

7

other than to convince the jury that Ansari is a bad person." ECF 92, PgID 2136. He thus moved to exclude evidence that he has committed other crimes and has been involved in the illegal drug trade. *Id.* Propensity evidence is inadmissible. Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). But evidence that a witness committed a crime, wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Defendant claimed that "the primary purpose for introducing evidence of [P]laintiff's criminal activity, drug use, and alcohol use . . . is because it is relevant to the damages that plaintiff seeks." ECF 118, PgID 2806. Defendant generally noted a host of crimes, bad acts, and other wrongs which could reduce Plaintiff's damages award. *See id.* at 2797–805. But Defendant did not attach any discrete pieces of evidence. *See* ECF 118. And it is unclear whether the evidence will be offered in the form of testimony, physical documents, video, or other means. Nor is it clear whether the evidence will be offered as direct evidence, circumstantial evidence, or to impeach Plaintiff when he takes the stand. While the Court understands Defendant's position on the admissibility of bad acts evidence, it cannot rule on evidence of crimes, wrongs, or other bad acts of Plaintiff because it is unclear what evidence will be offered or the context in which the evidence will be offered. Without discrete evidence and context, the Court cannot conduct a complete Rule 403 analysis. The Court will therefore deny the motion in limine.

8

The Court will, however, rule on what evidence of crimes, wrongs, or other bad acts is admissible on the issue of damages. The Court is inclined to receive three categories of evidence on the issue of damages: (1) evidence that Plaintiff took prescription drugs for stress or anxiety either before or after his conviction; (2) evidence that held, had the ability to hold, or did not hold or have the ability to hold a legal job before his conviction; and (3) proven instances of illegal drug usage before his conviction. And the evidence offered within those three categories must not be speculative. Any evidence that lacks independent proof or corroboration will likely be excluded under Rule 403 because its probative value would be substantially outweighed by a danger of "wasting time." Indeed, the scope of evidence Defendant proposed to offer is staggering and covers Plaintiff's use of drugs as a child, conjectural work for a drug "kingpin," his criminal record, his driving record, his pre-conviction residences, his drinking habits, religious beliefs, relationships, sexual history, familial background, work history, and mental health diagnoses before, during, and after his imprisonment. *See* ECF 118, PgID 2797–805. Because of the great danger of unfair prejudice, wasting time, and even the presentation of cumulative evidence, the Court will exclude speculative evidence outside the scope of the three above-described categories. Defendant may lay a foundation and offer evidence that he believes is narrowly tailored to the issue of damages and that does not include a risk of wasting time, unfair prejudice, or needless presentation of cumulative evidence. Likewise, Plaintiff may object to the admission of evidence in the above-described categories at trial.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that motion in limine [89] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that motions in limine [91] and [116] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant must **SUBMIT** the above-described redacted copy of the Tusar Memo to the Court's chambers for in camera review **no later than June 21, 2023**.

**IT IS FURTHER ORDERED** that motion in limine [92] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: June 20, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 20, 2023, by electronic and/or ordinary mail.

s/ Richard Loury  
Case Manager