UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDRE ANSARI,

                Plaintiff,

v.

MOISES JIMENEZ,

                Defendant.

_____/

Case No. 2:20-cv-10719

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
MOTION FOR A NEW TRIAL [180] AND DENYING
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW [181]**

A jury found that Defendant Moises Jimenez violated Plaintiff Alexandre Ansari's Fourteenth Amendment right to due process. ECF 162, PgID 3743–44. Before the jury returned a verdict, Defendant orally moved for judgment as a matter of law under Federal Rule of Civil Procedure Rule 50(a), and the Court denied the motion. ECF 178, PgID 5139. After the judgment, Defendant moved for a new trial, ECF 180, and renewed his motion for judgment as a matter of law under Rule 50(b). ECF 181. For the reasons below, the Court will deny the motions.

**BACKGROUND**

Plaintiff sued Defendant under 42 U.S.C. § 1983 for a wrongful conviction based on Defendant's alleged failure to turn over exculpatory evidence. ECF 1. A State court jury convicted Plaintiff of first-degree murder and two counts of assault with intent to commit murder. *Id.* at 5. The State court sentenced Plaintiff to life in prison without the possibility of parole. *Id.* Plaintiff's appeals failed. *Id.* at 6. Years

1

later, the Wayne County Conviction Integrity Unit (CIU) reviewed Plaintiff's case and determined that Plaintiff was factually innocent of the crimes for which he was convicted. *Id.* at 6–8. The Wayne County Prosecutor agreed to fully exonerate Plaintiff for the convictions. *Id.* at 8. The State court accordingly vacated Plaintiff's convictions and sentence. ECF 75-1, PgID 1909.

Plaintiff then sued Defendant—a Detroit Police Department detective and the officer in charge of the investigation that led to Plaintiff's prosecution—under § 1983 for *Brady* violations. ECF 1, PgID 2–10. Specifically, Plaintiff alleged that Defendant did not disclose material exculpatory evidence in his possession in violation of Plaintiff's Fourteenth Amendment due process right. *Id.* at 14–15.

The parties litigated the case for four years. In that time, the Court resolved many motions that ranged in complexity from discovery disputes to dispositive motions to pretrial motions in limine. At the Court's encouragement, the parties attempted mediation three times. But the mediations failed because a supervisory lawyer for the City refused to negotiate in good faith. *See* ECF 139, PgID 3474. After a jury was empaneled, the case went to trial, but both parties requested a mistrial, which the Court granted. ECF 132. The Court then convened another jury and conducted an eight-day jury trial, during which the lawyers on both sides made their animosity for one another and their refusal to cooperate apparent. In contravention of the Court's orders and admonishments, the lawyers engaged in speaking objections in front of the jury, re-raised issues that the Court previously resolved, and argued

over the use of exhibits and demonstratives despite the Court's many instructions to agree on trial tactics before trial.

In the end, the jury concluded that Defendant violated Plaintiff's Fourteenth Amendment right to due process and awarded Plaintiff a total of $10 million in compensatory damages. ECF 162, PgID 3743–44. Before rendering a verdict, Defendant made an oral motion for judgment as a matter of law, ECF 173, PgID 4876, which the Court later denied, ECF 178. For many of the same reasons, the Court will deny Defendant's renewed motion for judgment as a matter of law. ECF 180. The Court will also deny Defendant's motion for a new trial.

## DISCUSSION

I.   <u>Renewed Motion for Judgment as a Matter of Law</u>

If the court denies a motion for judgment as a matter of law under Rule 50(a), the movant may renew the motion. Fed. R. Civ. P. 50(b). The court applies the same standard to a renewed motion as it does to the motion for judgment as a matter of law under Rule 50(a). "Judgment as a matter of law is appropriate '[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Burley v. Gagacki*, 729 F.3d 610, 621 (6th Cir. 2013) (alteration in original) (quoting Fed. R. Civ. P. 50(a)). A court should only grant judgment as a matter of law if "there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Id.* (quotation omitted). Courts thus review the evidence "in the light most

favorable to the non-moving party" and determine whether there was a "genuine issue of material fact for the jury." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001) (citation omitted).

Defendant raised three bases for granting judgment as a matter of law in the renewed motion: (1) the Court lacks subject matter jurisdiction under *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the alleged *Brady* evidence was not material and was turned over to the prosecutor; and (3) Defendant was entitled to qualified immunity. ECF 181. The Court addressed the first two arguments in its order denying judgment as a matter of law, ECF 178, and in prior orders denying motions to dismiss, ECF 80, and for summary judgment, ECF 70. The Court also addressed the qualified immunity argument in its prior order denying summary judgment. ECF 70, PgID 1828. For the reasons explained in those prior orders—and summarized below—the Court will deny the motion on all three grounds.

*A. Subject Matter Jurisdiction*

Defendant insisted that the Court lacked subject matter jurisdiction under *Heck*. ECF 181, PgID 5195. In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. Defendant argued that

Plaintiff's sentence was not properly overturned by the Michigan State court and that the Court declined to decide whether Plaintiff's conviction was properly vacated. ECF 181, PgID 5195–96.

The Court ruled on the issue twice. *See* ECF 80; 178. In response to Defendant's motion to dismiss, the Court conducted the two-part analysis laid out in *Heck* and found that the conviction was validly vacated by the State court. ECF 80, PgID 1976–78. Contrary to Defendant's accusation, the Court did not decline to rule on whether it had subject matter jurisdiction under *Heck*, but rather declined to sit in review of the State court's procedure for vacating the conviction. *Id.* The Court reaffirmed the reasoning in its denial of Defendant's oral motion for judgment as a matter of law. ECF 178, PgID 5135–36. To be clear, the Court will not determine whether the State followed its own procedure for vacating criminal convictions. Michigan vacated Defendant's conviction, which is enough to confer subject matter jurisdiction on this Court. The Court will continue to follow the reasoning set forth in the prior two orders, ECF 80, 178, and deny the renewed motion for judgment as a matter of law based on a lack of subject matter jurisdiction.

### B. Brady Evidence

Defendant raised two separate issues regarding Plaintiff's *Brady* claim. First, Defendant argued that the purportedly withheld evidence was not material. ECF 181, PgID 5204. Second, Defendant argued that there was no question of fact as to whether Defendant provided the evidence to Prosecutor Erika Tusar. *Id.* at 5213. Again, the Court previously addressed these issues when it denied Defendant's motion for

summary judgment and his oral motion for judgment as a matter of law. ECF 70, PgID 1824–29; ECF 178, PgID 5136–38.

Under *Brady*, prosecutors may not suppress evidence that "is material either to [the defendant's] guilt or . . . punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

To prevail on a *Brady* claim, Plaintiff must prove by a preponderance of the evidence the following three elements: (1) the evidence at issue must favor "the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) the criminal defendant must have suffered prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Defendant first claimed that the purportedly withheld evidence was not material under *Brady* because the evidence was not favorable to Plaintiff. ECF 181, PgID 5204. Defendant argued that the evidence does not "exculpate Plaintiff but merely inculpates another individual who may have wanted to kill the victims." *Id.* at 5204–05.

Defendant insisted that the evidence would not have served any purpose at Plaintiff's criminal trial because the witnesses who could have been impeached— Rosalind Barley and Miguel Figueroa—did not testify at the criminal trial and the

6

case there was not about motive but rather about identity. *Id.* at 5205. The Court addressed the issue in its order denying Defendant's motion for summary judgment and found that the evidence would have been favorable and material evidence under *Brady*. ECF 70, PgID 1826; *see also* ECF 178, PgID 5137. The Court adopts and reaffirms that finding now. Had the evidence been turned over, the witnesses called during Plaintiff's criminal trial could have differed and testimony might have established Plaintiff's innocence. Evidence of motive could have been introduced and refuted. Defendant cannot rely on the criminal trial to state that the *Brady* evidence would have been irrelevant because it quite simply would have been a different case.

Defendant also argued that there was no question of fact as to whether Defendant provided the purportedly exculpatory evidence to the prosecutor. ECF 181, PgID 5213. Not so. Defendant relied on his own testimony at trial and information in Prosecutor Tusar's file to support the claim that Defendant turned the evidence over to the prosecutor. But, as the Court previously explained, ECF 70, PgID 1828, there was a genuine issue of fact as to whether Defendant turned the evidence over to the prosecutor before Plaintiff's criminal trial. Indeed, Prosecutor Tusar testified at trial that she did not receive any of the evidence at issue from Defendant before Plaintiff's criminal trial. ECF 171, PgID 4529–32, 4544, 4570, 4586–87. And the Court did not admit the prosecutor's 911-page file into evidence because there was no foundation laid as to when certain documents were placed in the file or who placed them in the file. *See* ECF 158 (order denying admissibility of Wayne County Prosecutor's Office file). The jury was therefore left to weigh the credibility of the

witnesses and the evidence and decide whether Defendant turned the evidence over to Prosecutor Tusar before Plaintiff's trial. That question was not—and is not—an appropriate question for the Court to decide. *See United States v. Jackson*, 918 F.3d 467, 479 (6th Cir. 2019) ("[W]itness credibility is quintessentially a question of fact for the jury."); *Rhinehimer v. U.S. Bancorp Investments, Inc.*, 787 F.3d 797, 804 (6th Cir. 2005) ("The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The judgment of [the] court should not be substituted for that of the jury.") (citation omitted).

The Court will deny Defendant's renewed motion for judgment as a matter of law because, for the third time, the Court finds that the evidence was material and there was an issue of fact as to whether Defendant turned the evidence over to the prosecutor before Plaintiff's trial.

### C. *Qualified Immunity*

Last, Defendant argued that he was entitled to qualified immunity. ECF 181, PgID 5197. Although Defendant briefly mentioned qualified immunity in passing during the oral motion for judgment as a matter of law, the Court did not address qualified immunity in its order denying the oral motion, ECF 178, because Defendant did not argue in support of his entitlement to immunity. ECF 173, PgID 4889. The Court will, however, address the qualified immunity issue now because Defendant fully briefed the issue in the renewed motion. ECF 181, PgID 5197–04.

"Qualified immunity is an affirmative defense" to a § 1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). It "'shield[s]' public

officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts a qualified immunity defense, "Plaintiff bears the burden of showing that [the] defendant[] [is] not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

The Court must engage in a two-prong analysis and may ultimately decide which prong to analyze first. *Maben*, 887 F.3d at 269 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). First, the Court must "view[] the facts in the light most favorable to [] [Plaintiff]" and "determine whether the officer committed a constitutional violation." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002)). Second, "if there is a constitutional violation, the [C]ourt must determine whether that constitutional right was clearly established at the time of the incident." *Id.* (citation omitted).

In its order denying Defendant's motion for summary judgment, the Court ruled that it would not grant qualified immunity because there was a genuine issue of material fact regarding whether Defendant presented the evidence to the prosecutor. ECF 70, PgID 1828. Because there was a genuine issue of fact, the Court could not decide whether Defendant committed a constitutional violation and could not grant qualified immunity on the first element. *Id.* In his renewed motion,

Defendant argued that the purportedly withheld evidence was not material evidence because it does not exculpate the Plaintiff. ECF 181, PgID 5203–04. Defendant contended that, because there was no material evidence, there was no constitutional violation, so Defendant should be granted qualified immunity. *See id.* at 5204–05. The Court, however, already ruled that the evidence in question was material under *Brady*. *See* ECF 178, PgID 5137–38. And Defendant was not entitled to qualified immunity.

After considering Defendant's arguments for the third time, the Court will once again deny Defendant's motion for judgment as a matter of law.

## II.  Motion for a New Trial

Defendant moved for a new trial under Federal Rule of Civil Procedure 59. Courts may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). And "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by . . . the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. Massillon*, 78 F.3d 1041, 1045−46 (6th Cir. 1996) (citations omitted).  Defendant presented numerous grounds that he believes warrant a new trial. The Court will address each argument in turn.

### A.  *Wayne County Prosecutor Office File*

First, Defendant argued that the Court should have admitted the WCPO file into evidence. ECF 180, PgID 5159. The Court entertained and considered extensive briefing and arguments regarding the admissibility of the file. *See* ECF 146, 150, 152,

154, 155, 157, 158. The Court issued an order denying the admissibility of the file but allowed the parties to make arguments and statements about the file and its contents—according to what evidence was presented at trial—during closing arguments. ECF 158. The Court incorporates its prior order, ECF 158, and maintains that the potential probative value was substantially outweighed by the danger of unfair prejudice, confusing the issues, and needlessly presenting cumulative evidence.

In his motion for a new trial, Defendant argued that the file should have been admitted as self-authenticating under Federal Rule of Evidence 902(11) and that Defendant was not offering anything in the file for the truth of the matter asserted so its contents cleared the hearsay hurdle. ECF 180, PgID 5159–5162. But Defendant ignored the basis for the Court's evidentiary ruling. Authentication and hearsay were not barriers to admissibility. *See* ECF 158. Unfair prejudice under Rule 403 was the basis for the Court's ruling. *Id.* Indeed, for the same reasons that admissibility would have been confusing at best and unfairly prejudicial at worst, there is no reason to believe that the file, if admitted, would have helped Defendant. The file contained 911 pages. Its contents were not contextualized, summarized, or organized by any witness during trial. Prosecutor Erika Tusar testified that she did not know the contents of the file, who had access to the file at what time, or when documents were placed in the file. And Defendant did not allege that there was a smoking gun in the file that proved Erika Tusar knew about the exonerating evidence *before* Plaintiff's criminal trial. The file only showed—and Prosecutor Tusar did not deny—that she

11

became aware of the aforementioned evidence at some point. And the Court specifically instructed Defendant to present such evidence. ECF 157, PgID 3734–35 ("[T]o the extent the parties disagree about the timing and substance of the file's contents, the parties should be prepared to call and question witnesses who can attest to the substantive content of the file."). The Court's decision to not admit the WCPO file was correct and does not warrant a new trial.

   B. *Jury Verdict Form*

   Second, Defendant argued that the Court erred by "not allowing Defendant to present his proffered Verdict Form to the jury." ECF 180, PgID 5165. Defendant proposed a jury verdict form that asked the jurors "Did Defendant, Moises Jimenez, violate Plaintiff, Alexandre Ansari's, Fourteenth Amendment right to due process by withholding exculpatory evidence from the prosecutor?" *Id.* at 5167. After considering the arguments from both parties, the Court allowed the jury verdict form to state "Did Defendant, Moises Jimenez, violate Plaintiff, Alexandre Ansari's, Fourteenth Amendment right to due process?" ECF 162. The Court reasoned that Plaintiff's complaint simply alleged that Defendant violated Plaintiff's Fourteenth Amendment right to due process and that the simple question posited by the allegation was the question on which the jury should deliberate. ECF 173, PgID 4946–47.

   Defendant argued that he was prejudiced by the simpler verdict form because it "allowed the jury to consider other alleged actions and inactions by Defendant Jimenez during his investigation as potential constitutional violations." ECF 180, PgID 5167. For example, Defendant was concerned that the jury may have found

Defendant liable based on the Jose Sandovol investigation. *Id.* But the verdict form specified that the jury needed to find that Defendant violated "**Plaintiff, Alexandre Ansari's**, Fourteenth Amendment right." ECF 162 (emphasis added). The verdict form therefore did not allow for the type of finding that Defendant feared—that is, a finding of liability based merely on Defendant's investigatory failures. Rather, the verdict form appropriately specified the finding the jury needed to make.[1]

### C. *Jury Instructions: Attorney-Witness Communications*

Next, Defendant argued that the Court should have given several jury instructions that the Court declined to give. Defendant falsely claimed that the parties stipulated to an instruction regarding the propriety of attorney contact with a witness. ECF 180, PgID 5168–69. To the contrary, the parties disagreed about whether the instruction should be given and whether it should be accompanied by instructions on other Michigan professional conduct rules regarding lawyer communications with represented persons. ECF 173, PgID 4950–52; 4956. Because the conduct of the lawyers in the case was mixed between effective advocacy and needlessly unprofessional bickering and because the Court wanted the jury to focus on the credibility of witnesses, not the attorneys, the Court declined to give any instruction regarding attorney-witness contact. *See id.* at 4957–59; ECF 174, PgID 4972–74. The Court also ordered Plaintiff's counsel not to "tak[e] potshots or mak[e] statements about Krystal Crittendon's phone call with [Erika] Tusar." ECF 174, PgID

---

[1] The case law that Defendant presented is inapposite. The cases address specificity of jury instructions, not verdict forms. *See* ECF 180, PgID 5164–65.

4972–74. Those rulings were not in error. Rather, it saved the jury from hearing irrelevant and unsavory arguments about lawyer professionalism.

### D. Jury Instructions: Eggshell Skull Plaintiff Rule

Defendant also argued that the Court's jury instruction on the eggshell skull theory of liability prejudiced Defendant because it "allowed the jury to conclude that they did not have to consider the preexisting stress in [Plaintiff's] life before imprisonment." ECF 180, PgID 5170. Defendant's argument is confusing because the eggshell skull plaintiff instruction, in fact, informed the jury that Plaintiff's preexisting mental and emotional states were relevant, permissible considerations. As far as the legality of the instruction is concerned, the Court extensively researched the issue and distinguished the case before it from a case that Defendant relied on, *Virostek v. Liberty Twp. Police Dep't*, 14 Fed. App'x 493 (6th Cir. 2001). ECF 173, PgID 4937–39. In *Virostek*, the Sixth Circuit upheld omission of an eggshell skull plaintiff instruction because the plaintiff did not present evidence of a pre-existing emotional condition. 14 Fed. App'x at 507–08. In other words, the court reasoned that she "failed to establish that she was indeed 'an eggshell plaintiff.'" *Id.* Here, unlike *Virostek*, Plaintiff offered evidence at trial of his preexisting mental and emotional distress. ECF 173, PgID 4938–39. He even called an expert witness, Dr. Shiener, to testify about Plaintiff's condition prior to incarceration. *Id.* The Court's instruction to

14

the jury on the eggshell skull plaintiff rule was therefore not an error and does not warrant a new trial.

### E.  Juror Questions

Defendant claimed that the Court failed to advise the jury to not talk about the case or look up information about the case online before the Court released the jury on the first day of deliberations. ECF 180, PgID 5170. Not so. Just before the Court released the jurors for deliberations on the first day, the Court admonished the following:

> When you start deliberating, do not talk to the jury officer, me, or anyone but each other about the case. During your deliberations you must not communicate with or provide any information to anyone by any means about the case. You may not use any electronic device or media such as a cell phone, smartphone or computer of any kind, the Internet, any Internet service, or any text or instant messaging services like Twitter or Snapchat, or any Internet chatroom, blog, website, or social networking website such as Facebook, Instagram, Tumbler, LinkedIn or YouTube to communicate to anyone any information about the case or to conduct any research about the case until I accept your verdict.
> You may not use these electronic means to investigate or communicate about the case because it's important that you decide this case based solely on the evidence presented in the courtroom. Information on the Internet or available through social media might be wrong, incomplete or inaccurate. Information that you might see on the Internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you.

ECF 174, PgID 5101–02. Defendant's argument is plainly incorrect.

Additionally, Defendant argued that the Court erred when it "answered two jury questions without input from Plaintiff or Defense Counsel." ECF 180, PgID 5170–71. Defendant claimed that the questions should have been answered "in open court and in the presence of counsel for both sides." *Id.* (quoting *U.S. v. Combs*, 33

*United States v. Bustamante*, 805 F.2d 201, 203 (6th Cir. 1986) (finding that, even though the district court erred by answering a jury's question without convening the lawyers, the error was harmless and did "not automatically compel reversal of this otherwise well tried case").

Defendant did not suggest that he would have answered the juror's questions any differently than the Court. *See* ECF 180. And Defendant did not suggest or argue that the Court's response to the jury was prejudicial. *See id.* In fact, no prejudice could have occurred because, even if the parties changed their minds and decided to respond substantively to the jury's questions about evidence outside the record, the questions were not germane to the question of liability. The jury asked where each exhibit originated (i.e., from a discovery or a prosecutor file), why two exhibits (numbers 26 and 38) were identical, and what "DEFS RESP to 3rd RFP" meant. ECF 176, PgID 5124–26. Because the responses were not "confusing or misleading to the jury or potentially harmful to the defendant," the Court will not grant a new trial. *Bustamante*, 805 F.2d at 203.

### F. Closing Argument Conduct

Next, Defendant argued that Plaintiff's counsel "engaged in improper conduct and argument during [c]losing [a]rgument which denied Defendant a fair trial." ECF 180, PgID 5171. When deciding whether misconduct or improper argument merits a new trial, "a court must examine on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the

court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself." *Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980). "[W]here there is a reasonable probability that the verdict of a jury has been influenced by [improper] conduct, it should be set aside." *Id.*

Defendant took issue with Plaintiff's counsel's (1) PowerPoint which showed a photograph of headstones in Arlington National Cemetery, (2) references to Plaintiff's counsel's veteran father, (3) appeals to patriotism by speaking about soldiers who fought and died to protect constitutional rights, (4) physical display of an American flag, and (5) tears while he spoke about his police officer son. *Id.* at 5171–72. Plaintiff argued that these references and emotional displays were "highly prejudicial and denied Defendant a fair trial." *Id.* at 5172. Defendant objected at trial to these remarks. *See, e.g.* ECF 174, PgID 5009, 5078.

Although Plaintiff's closing argument pushed the envelope, the references to soldiers and to Plaintiff's counsel's family were still not unfairly prejudicial; they were anecdotes to persuasively frame the constitutional issue in Plaintiff's favor—which is the purpose of closing remarks. And any risk of prejudice was mitigated by the Court's jury instruction. The Court instructed the jury that "the evidence from which you are to find the facts consists of the following: (1) the testimony of the witnesses; (2) documents and other things that were received in evidence; and (3) any facts that are stipulated, that is, formally agreed to by the parties." ECF 174, PgID 5088 (alterations omitted). And the Court clarified that "[s]tatements, arguments and questions of the lawyers for the parties in this case" are not evidence. *Id.* The Court

18

then explained that the jury must render a "decision based only on the evidence that you saw and heard here in court." *Id.* at 5089. The jury was therefore instructed not to consider Plaintiff's counsel's props or familial patriotism in their deliberations on substantive factual issues. The risk of prejudice was mitigated by the Court's jury instructions.

Moreover, "the verdict itself" weighed against a finding that a "reasonable probability that the verdict of a jury has been influenced by improper conduct" exists. *Cleveland*, 624 F.2d at 756. Plaintiff's counsel asked for $26,195,000 in compensatory damages, ECF 174, PgID 5013, and an equal amount, $26,195,000, in punitive damages, *id.* at 5015. The jury awarded $10,000,000 in compensatory damages and, notably, no punitive damages. ECF 162, PgID 3744. Plaintiff's alleged prejudicial arguments failed to inflame the punitive passions of the jury and garner an unreasonably large award.

In sum, parties are afforded some discretion to present their case to the jury in a manner they deem persuasive; that is the purpose of closing arguments. Although he toed the line, Plaintiff's counsel did not cross the line between persuasion and prejudicial argument. And because a reasonable probability does not exist that the verdict was influenced by improper conduct, the Court will not grant a new trial.

*G. Batson Challenge*

Defendant also argued that the Court should have denied Plaintiff's *Batson* challenge "because Defendant provided a race-neutral reason for his proposed strike." ECF 180, PgID 5172. Plaintiff objected to Defendant's preliminary strike of Juror

19

Number 5, an African-American male. ECF 168, PgID 3901. Defendant allegedly believed he recognized Juror Number 5, but he did not state how or from where he knew the juror. *Id.* at 3903. Defense counsel argued that Defendant may have encountered Juror Number 5 at some point during Defendant's career as a police officer. *Id.* at 3903–04.

In *Batson v. Kentucky*, the Supreme Court held that the Equal Protection Clause of the 14th Amendment prohibits prosecutors from challenging potential jurors solely on account of their race. 476 U.S. 79, 86–7 (1986). The Court extended *Batson* to civil cases in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (1991). As an initial matter, Plaintiff established a prima facie case for a *Batson* challenge because Juror Number 5 was a member of the same cognizable race group as Plaintiff—that is, both were African Americans—and there were few other African Americans on the jury panel from which the venire would be selected. ECF 168, PgID 3909; *see Batson*, 476 U.S. at 95 ("a [party] may make a prima facie showing of purposeful race discrimination in selection of the venire by relying solely on the facts concerning its selection in his case") (alterations omitted).

Defendant provided a race-neutral explanation for the preliminary strike. ECF 168, PgID 3909–10; *see Batson*, 476 U.S. at 97 (after a prima facie showing, the burden shifts to the other party to provide a neutral explanation for the challenge). Defendant claimed he wanted to strike Juror Number 5 because Defendant believed he recognized the juror. Even so, the Court ultimately determined that Defendant's reason was pretextual because it was not credible. ECF 168, PgID 3910–11; *see*

*Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (the trial court must determine whether the race-neutral explanation is credible). "Credibility can be measured by, among other factors, the [party's] demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El*, 537 U.S. at 339.

On the one hand, Defendant was not sure he knew who Juror Number 5 was. *See* ECF 168, PgID 3903–04. Juror Number 5, on the other hand, answered under oath that he never had any involvement in the criminal justice system, that he had no biases against the police that would prejudice him in this case, and that he did not recognize either party in the case. ECF 168, PgID 3910–11. The Court explained that "it's too convenient for prosecutors or defense attorneys or plaintiff's attorneys in cases like this to say that . . . 'I may have known the juror' . . . [I]t's a very bare and unsupported ground on which to have a person not serve." *Id.* at 3911. The Court's decision to not strike Juror Number 5 was well-reasoned and not an error. *See id.* at 3912.

Alternatively, Defendant asserted that the Court should have allowed him to strike another juror when the Court disallowed Defendant to strike Juror Number 5. ECF 180, PgID 5173–74. But the Court may only grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Defendant provided no authority to support his assertion that he was entitled to another preemptory strike and that denial of it constitutes plain error and warrants a new trial. *See* ECF 180, PgID 5173–74. And the Court did

21

not find a case to support Defendant's argument. The Court will not grant a new trial on unsupported grounds.

### H. Erika Tusar Memorandum

Last, Defendant argued that he is entitled to a new trial because the Court should have, but did not, admit the entire memorandum prepared by Prosecutor Tusar. ECF 180, PgID 5174. The admissibility of the Tusar memo was the subject of a motion in limine. ECF 91. As with most of Defendant's post-verdict arguments, the question was briefed and argued extensively. *See id.*; ECF 114; ECF 130. And the Court ruled that the memo contained "(1) highly relevant information that is probative of whether Prosecutor Tusar knew of the allegedly withheld *Brady* and *Giglio* evidence and (2) irrelevant evidence about murder cases and criminal investigations that are highly prejudicial and not at issue in the present trial." ECF 130, PgID 2929. The Court therefore admitted the former and ordered the parties to redact the later. *Id.* at 2929–30.

Defendant relied on the Rule of Completeness, Federal Rule of Evidence 106, to argue that the Court should have admitted the entire Tusar memo, unredacted. ECF 180, PgID 5175. But the Rule permits—and does not require or guarantee—the introduction of "any other statement [] **that in fairness** ought to be considered at the same time" as the objected-to evidence. Fed. R. Evid. 106 (emphasis added). The Rule does not supersede Rule 403. *United States v. Dotson*, 715 F.3d 576, 582 (6th Cir. 2013). And the Court explained on many occasions that evidence of other criminal investigations involving Plaintiff were more prejudicial than probative. *See, e.g.*, ECF

130, PgID 2929. The Court did not err by admitting only part of the Tusar memo. The Court will not grant a new trial on that basis.

CONCLUSION

Defendant failed to demonstrate that the jury's verdict in Plaintiff's favor was against the manifest weight of the evidence. The Court will not issue judgment as a matter of law or order a new trial. The jury's verdict stands.

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for a new trial [180] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's renewed motion for judgment as a matter of law [181] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 19, 2024